The case for argument is Day v. Wooten. Mr. Wilfontek May it please the court. My name is Adam Wilfontek and I represent Sgt. Wooten and Sgt. Denny did not approve the 2015 certified immunity appeal. One undisputed fact not found in the record is that the September 26th 2015 death of Terrell Day was a tragedy. Plain and simple. But tragedies do not always amount to violations of clearly established constitutional rights and this appeal is case in point. Sgt. Wooten and Officer Denny submit that they did not violate clearly established law where as here Terrell Day never complained about how tight the handcuffs were or indicated that the cuffs were causing his breathing difficulties, that the medics cleared him for transport to jail after an examination without interference from police officers and those medics never said that those cuffs should be removed or modified. When it became apparent after two sternum rubs that something was wrong with Day, despite being medically cleared shortly prior, the officers called medics again. These officers are entitled to qualified immunity. They were not plainly incompetent nor did they knowingly violate the law. They did what you would want police officers to do in the circumstances in which they found themselves. At approximately 1254 p.m. on September 26th 2015, a police dispatch went out for an armed shoplifter running from a department store across an intersection to a gas station on the east side of Indianapolis. This was the information that Officer Denny and Sergeant Wooten had when they arrived on scene a few minutes apart from one another. Officer Denny arrived and immediately handcuffed Terrell Day behind his back to detain him. What was his condition at that point? If this the officers could tell. Officer Denny testified that as far as he observed, Mr. Day was winded, overweight, and sweating at that time, your honor. I hear he was 312 pounds? He was, yes. That is what the weight that was determined at his autopsy. And when he was detected as shoplifting, he ran, went across the intersection and what, collapsed or fell down or what? He basically gave up after running, yes, your honor. And the police weren't there yet? The police were not there. The police arrived shortly after. A loss prevention officer from the department store chased him after a confrontation where he refused to come to the store to talk about the watch that he apparently stole. Denny immediately handcuffed Day without issue. Denny testified that Mr. Day's hands came together easily behind his back. Day then complained to Officer Denny that he had difficulty breathing. But this was not surprising. Day had just fled a department store with a gun after attempting a theft. He was obese, sweating, and out of breath. Denny acknowledged Day's condition. He instructed Day to take deep breaths in and out to slow his breathing. Denny also had a handgun laying a few feet away that he needed to secure and an investigation to initiate. I assume that was Day's gun. Yes, your honor. It was a few feet away. It was, yes. Now, the district court found this act of handcuffing to be, quote, unquestionably reasonable. Minutes later, Sergeant Wooten arrived. And when Day complained to him of difficulty breathing, Wooten called the medics. This was five minutes after Denny, Officer Denny initially detained him. The medics arrived quickly, and they examined Day without interference from police officers. Day never mentioned anything about those cuffs to the medics. And the medics did not find those handcuffs to be a hindrance in evaluating him. If the handcuffs had caused those medics any concern, they knew they could ask the officers to remove them. Day said he was having trouble breathing, but the medics' assessment showed otherwise. Day told the medics that he had no preexisting health issues. And in their professional judgment, based upon the medics' evaluation, they believed that Day was fine and did not need to be transported to the hospital for additional medical treatment. What tests or whatever did the medics do on Day? So they put a pulse oximeter on him to determine his blood oxygen saturation. His blood oxygen saturation was 97%, meaning he didn't need any oxygen. They were unable to take his blood pressure because he would not allow them to. But they listened to his lungs with a stethoscope, and they found BBS, clear bilateral breath sounds that were present and clear. And so they conducted this evaluation of him. They were talking with him. They said he was breathing regularly and normally. He was responding to their questions. And after they made their determination that they weren't going to transport him, they informed the officers, he's fine, we're not going to transport him to the hospital. How long did that take for the medics? How long did the evaluation take, Your Honor? I think the record is not exactly clear on the duration, but it was approximately 10 to 15 minutes. So after the medics informed the officers that they were not taking Day to the hospital, as in Day himself never asked to go, Sergeant Wooten, they requested, the medics requested that Sergeant Wooten sign a signature of release. And that was so the officers could regain custody of Day since they weren't going to take him to the hospital. Can I interrupt for just a minute? Absolutely. So, to me, this case turns on whether there was a case at the court of appeals level, not at the district court level, that clearly established that what they were doing was unconstitutional. And, so far as I can tell, in the factual situation that we have here, Day never told the officers that the breathing problems were in any way related to the handcuffing, is that correct? That is correct, Your Honor. So, in your view, what's the closest case? The closest case that is probably most analogous for us would be Estate of Phillips versus City of Milwaukee. And in that case, there's a lot of similarities. Both the individuals were overweight, they were detained, police officers called medics once it became apparent that the arrestee was, the health condition of the arrestee was called into question, and they waited for the medics to arrive. They constantly monitored him, just as the officers did here with Mr. Day, and, unfortunately, the arrestee ultimately perished. So testimony from Wooten and Denny, along with both medics, confirm that police officers have no ability to impact the medical treatment an arrestee receives. Once Denny knew that Day was not going to be taken to the hospital, he requested a jail wagon, and it arrived about 20 minutes later. Now during this time, Day laid on his back, on his handcuffs, on the ground, which was not an uncommon position for suspects to be in. And Sergeant Wooten or other police officers were always near Day to monitor him. And while waiting for the jail wagon to arrive, Day's eyes were open, he was breathing, and But when Deputy Monday from the Marion County Sheriff's Office arrived and began searching Day for contraband before transporting him to jail, something seemed wrong. In spite of Day breathing, his eyes being open, he didn't respond to Monday's questions. And after failing to show a response to two sternum rubs, Monday said he couldn't transport Day because he might be having a medical emergency. So Wooten called the medics back to the scene. The officers assisted the medics in placing Day on a gurney. One officer overheard the medics say that Day's pulse was weak. They placed him into the ambulance and began performing CPR on him. Day was pronounced dead 30 minutes later. Now the sole claims against the officers on appeal are excessive force based on excessively tight handcuffing. The question under Stainback versus Dixon is whether these officers knew that the handcuffs were causing Day's breathing difficulties. Now Stainback also says that an officer cannot be expected to accommodate an injury or medical problem that is not apparent or haven't been made aware to him. The only evidence in the record that the handcuffs had anything at all to do with Terrell Day's injury or death was an autopsy report that was conducted after the fact. But of course case law instructs that only the information known to the officers on scene at the time of the incident may be considered. Curiously though, Day's autopsy never found any internal or external injuries to Day's wrists, which is not what you would expect if Day's handcuffs were indeed too tight. The autopsy further revealed that Day had a variety of underlying cardiac conditions which he was even aware of. In any event, there were no complaints about handcuffs to Officer Denny. There were no complaints about handcuffs to Sergeant Wooten. There were no complaints to either medic or the jail wagon about the cuffs. Terrell Day never complained that the handcuffs were tight, too tight or tight at all. No complaint whatsoever. When Officer Denny handcuffed him, Day never indicated that he had any pre-existing injuries or conditions which would be aggravated by using the force of handcuffs to detain and subsequently arrest him. He never complained about the position in which he was placed. He never complained that, or he never asked that the cuffs be placed in front. The medics likewise mentioned nothing about the handcuffs, and indeed they testified that the cuffs didn't hinder their evaluation of him. In short, clearly established law did not require Sergeant Wooten or Officer Denny to remove or modify Terrell Day's handcuffs. Was Day, at that point, was he gasping for breath or had he already gotten past that stage after his sprint away from the store or across the street? Your Honor, initially when Officer Denny handcuffed him, he was winded, he was sweating, he was out of breath. Denny testified that he had been even hyperventilating a bit at that time. But again, let's remember that the district court said that that act of handcuffing, the Officer Wooten testified that once he arrived and began to monitor him, Day had calmed down and began, it appeared, began breathing normally. Is it well known or obvious that putting someone in handcuffs who's having difficulty breathing exacerbates any breathing difficulty? Your Honor, I don't believe it's well known. It certainly wasn't known to these officers. Their depositions make that readily apparent. Officers do have discretion in handcuffing larger suspects with, again, handcuffing them in front or utilizing two pairs of handcuffs. But I don't think it's necessarily well known that placing a suspect in that position automatically leads to exacerbation of difficulty breathing or anything like that. So here, the district court's definition of Mr. Day's clearly established right was less than clear. She said that it was well established that it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, didn't disobey orders of police, and did not pose any threat to officers or others, and were suspected of only committing minor crimes. Well, that doesn't cut it because officers didn't yank Terrell Day's arms. Day didn't complain once about the cuffs being too tight. Now, the district court also said that there is a right to have officers consider whether an arrestee's injury or medical condition will be aggravated by placing the cuffs on the arrestee. Well, let's also remember that, again, the district court found the initial act of handcuffing reasonable under the circumstances. But in terms of considering Mr. Day's condition, the officers did consider it. Denny considered it by instructing him to take deep breaths in and slow down his breathing. Sergeant Wooten considered it by calling an ambulance. The medics considered it when they evaluated him. They determined that he was breathing regularly and normally and did not need to be taken to the hospital. The medics never said anything about the cuffs being removed or modified, and when it became apparent that something was wrong with Day, the officers considered it again by calling the medics back to the scene. Counsel, I've been waiting for you to address the plaintiff's principal contention on appeal, and so far you haven't done so. That contention is that the sign, the signature on the form says that Day is rejecting medical assistance. Yes, Your Honor. And if that is true, then all of your assertions about the EMTs evaluated him and so on are not correct. Now obviously we can't resolve a disputed issue of fact on an appeal based on qualified immunity, so I'm puzzled that you've chosen not even to address that argument. Your Honor, the appellants understand that they must walk a fine line when it comes to jurisdictional issues. They take the facts from the district court's opinion along with occasional undisputed evidence in the record, and to reiterate points raised in the officer's brief, this is not a sufficiency of the evidence challenge. We're not arguing about asking the court to resolve any factual dispute. The plaintiffs, excuse me, the officers contend there is no factual dispute. The district court explicitly found that the medics had cleared Day for jail, and that's on page 6 of the appendix in the district court's opinion, and where qualified immunity turns on an officer's actual conduct, it becomes necessary to look at all the undisputed evidence in the record, not just that the district court considered. That has support in Green v. Carlson, Washington v. Hoppert, White v. Gerardo, Thompson v. Cope, and that's also consistent with this court's standard of review in qualified immunity appeals. The undisputed evidence in the record shows that the medics cleared Day for transport to jail, and that after they made that determination, the medics themselves asked Sergeant Wooten to sign a signature release form transitioning custody back to police officers. So the question becomes, are there enough undisputed facts in the record which would entitle these officers to qualified immunity, and the officers contend that there are, and that there is jurisdiction. Thank you. Thank you, counsel. Ms. Alvarez. May it please the court. Your Honor was correct in identifying that the primary contention on appeal on our side is that there is no jurisdiction here. Well, we cannot resolve a factual dispute. The question is whether there is a factual dispute. Did you produce, for example, an affidavit from one of the emergency medical technicians saying, I wasn't given an adequate opportunity to examine Day? Certainly, Your Honor. I noted in my- I gather that both of them were subject to depositions. And they both said in the depositions that they did examine Day, and they found that he did not have any breathing problems. Is that an accurate summary? That is inaccurate, actually. In summary judgment, we designated evidence before the district court, and the district court nodded to the fact that these issues were in dispute. The medical report is at 781 in the appellate's appendix. And that's, and page 557, we designate, or we have the medic's deposition where he actually admitted to including false information in that medical report. There was also on page 811- My question is, did, in the depositions, did either of the emergency medical technicians say either that they had trouble examining Day, or that they found that he was in any breathing difficulty? Yes. In the record on page 504 during the deposition, the medics testified that Day was in fact non-responsive to their questions. He was not able to get responsive. I'm not asking whether he answered their questions. I'm asking whether they had difficulty performing an examination. Now, I gather that they were able to determine his oxygen concentration, right? They weren't able to determine his blood pressure, because he wouldn't let them. Well, that's a bit of a stretch, in fact, that he was uncooperative with the blood pressure cuff, but that was because he was in handcuffs, and they were unable to get it around his arm. So while he was technically uncooperative with that, it was due to the circumstance of the handcuffing. So the EMTs did testify that they did not have a complete assessment. And I dropped a footnote in the summary judgment brief that we have a pending medical malpractice case. In the summary judgment brief? Yes, on page- Look, you cannot refer to documents filed in other courts in appellate briefs. I understand. Did you have some point where I should look at it in your appellate brief? No. It's in the appendix, but I'll stick to the video evidence shows that he was, Trail Day was collapsing during the medical examination. The officers were attempting to stand him up, and they ended up having to lie him on the asphalt in order to continue the evaluation. And at the time, while he's lying on the asphalt, in the video evidence, you can see Sergeant Wooten pick up the pad and sign exactly his name on the refusal of medical treatment on page 785. This is after the examination of the meds? This is at the point that Trail Day collapses during the examination. And that was captured on- Was he on his feet at some point? The officers lifted him onto his feet, but he was unable to remain on his feet for very long. Well, he's 312 pounds. I assume nobody's holding him up. No, it took several officers in order to lift him for the medics to perform their evaluation. So the medics are holding him up while the meds are- Yes. They're giving an examination? Correct. Well, what's- I don't understand the blood pressure thing. How does- was he resisting, or they couldn't get it around his arm when he's being held up? That's correct. They were unable to get a blood pressure cuff around him due to just the logistics of him being in handcuffs, being held up by the officers. So it's not that he said, I don't want a handcuff, or I don't want a blood pressure. That's not in the record. What's in the record is that they were unable to perform a blood pressure reading. Was he communicating at all with the med people? The EMTs testified that he was not responsive to everything that they had asked him. Everything? Does that mean some things? They said- I believe the wording was that he was not responsive all the time. This is the first group of meds? This is the first group of meds. So in the video evidence- Should they have stayed longer? Should they have done more? Yes. Yes, they did not complete the examination due to the fact that Sergeant Wooten refused his medical treatment. So, Counsel, I'm trying to nail down exactly what you say the violation of clearly established law was. Is it that Wooten declined medical treatment when it should have been apparent to him that they needed it? Or is your contention that they should not have handcuffed him because he wasn't resisting and because his being in the handcuffs was excessive force because it exacerbated his breathing problems? Because it seems to me that if you take the medic out of it so that the officers- Let's assume there's a factual dispute and the officers can't rely on the medic's assessment to say that, well, we could rely on their saying that everything was fine. Still, you would have to point to a case which showed that they were on notice that it was the handcuffs that were causing the problem. And that's a different kind of claim than that, oh, you didn't get him the medical attention that he needed. So, can you articulate for me, point to me, and it can't be a district court case. You know, the district court relied on some district court cases. That's not good enough in the circuit. So, point to me the specific case that the officers violated. Okay. So, the specific case would be, in my opinion, the most on point would be the case of Payne. It came to the same result that we reached here. And Payne is a 2003 Seventh Circuit case. Fourth Amendment rights- But you don't have even a claim here that the handcuffs were excessively tight. Your argument is that it was a constitutional violation to use handcuffs at all. You don't have a claim that he violently jerked the arms, right? And you don't have a claim that Day was completely cooperative with the officers. They told him not to roll away, he did, and so on. So, how does one say that clearly establishes something when the statement of the rule in Payne itself describes a completely different set of facts? Yes, and I think, in my opinion, that's exactly why the district court relied on the similar district court cases. But you can't. District court cases do not clearly establish anything. They have no authoritative force. Certainly. I do think that it's unfortunate that that was what was relied on in the opinion. But I don't think that it affects the fact that the Fourth Amendment- Well, your problem is you've been asked, what is your best appellate precedent? Yes. And you name an appellate precedent that does not clearly establish the principle you need, which is that an obese person can't be handcuffed. Well, that's not our position, though. The position is that there's a Fourth Amendment right to not be excessively handcuffed by an officer who knows that it will exacerbate an injury or condition, which they all admit that he was winded, at the time where he is not resisting. And the district court- That an obese person who runs away can't be handcuffed. So, the unreasonableness occurred in time. It was initially reasonable, but at the time- You know, this lasted, you know, by the time the medics left, it was almost 20 minutes before he died. And during that time- Is there any appellate precedent in any other circuit establishing the proposition that an obese person who runs away and becomes winded can't be handcuffed? Period. No, but that's not the position. Well, counsel, let me go back. You know, I asked the defendant's counsel whether it was apparent- I mean, just speaking as a layperson, it's not apparent to me what the connection is between being handcuffed and having difficulty breathing. Is that something that's supposed- I mean, whereas, you know, the connection between neck or back pain or wrists being too tightly handcuffed, I mean, that's obvious. So, why should the officers have known that unhandcuffing him would have an effect on the breathing? Certainly. During the surveillance video, which we have the entire incident captured on video, you can see the officers monitoring- This is a question about law, not about whether something was captured on video. I understand. I would like to hear your answer to this legal inquiry. Yeah, so I've looked at the cases of Rooney, which is a 2014 case, Stainback, which is a 2009 case, Tibbs, which is a 2006 case, and Payne, which actually distinguished Tibbs based on the degree of the injury that was suffered. And here, the injury that was suffered was death. So, you know, Payne reached the same result because he was cooperative and he complained that the hands were numb. Here, he complained that he couldn't breathe. And you can see the shoulders are back so that the breathing is restricted through the lungs. The officers are checking him, and that's actually why there's a disputed fact about whether or not the second pair of handcuffs was added. You know, the wagon driver says that the handcuffs were added, or he says they weren't added, but Denny says that, Officer Denny says that he added a second pair of handcuffs after the first ambulance left so that he could breathe preferably. And I think that that dispute, while the court can address it, just demonstrates the knowledge that the officers had, that the handcuffs were causing a problem to the restricted breathing. I assume that when you add a second set of handcuffs, it just extends the range of the handcuffs. Certainly. It expands the, you know... Well, I mean, it lengthens the confinement. Correct. It opens the shoulders so that the lungs can expand more easily. All the officers testified that he was in medical distress, he was hyperventilating, and the fact that they did consider the second set of handcuffs after the fact, that that became a dispute, I think is informative of their knowledge that this was an issue. Did the medics make a mistake? They did. They actually testified that they gave false information on their medical report. And we have video evidence that confirms their later testimony of what actually occurred at that time. So the report that was submitted is actually inaccurate. But if the police officers rely on the medics... Correct. ...to show up, and now you're saying, well, they misrepresented something? Well, they misrepresented in their report, but the police officers were present at the time that the medics performed the evaluation. And all the testimony shows that during this evaluation, they were unable to complete it because he was collapsing on the floor. And then we have Sergeant Wooten, who signed the medical refusal, and it says that he assumes full responsibility for medical treatment that may result in disability or death. Well, yeah, but he's, in effect, releasing custody, relinquishing, or maybe the medics are relinquishing. I guess they're in charge while they're there. Is that right? I think the real problem is that it's a disputed fact, whether or not this was the cause of the termination of the medical treatment, because it's entitled treatment slash transport refusal. And the signature line says... That's most very conclusive. I'm looking at what happened on site, apparently. They did an examination of several things and seemed to be satisfied that he was no longer in distress or whatever. And so they hand whatever they have to get signed over to the cop, and then he signs it. And all the other small print, I'm sure nobody read it. They already know what's in it. Certainly, and what we argue in the district court is that viewing these facts in the light most favorable to the plaintiff, the officer signed the refusal of treatment, and then the ambulance driver made the report that supported him going back into police custody. But when we deposed him about what actually occurred at that time, that the police officers were present when they were holding him up for the medical evaluation, is that they were actually unable to complete it because he was in such medical distress, which is, I can't get into our medical malpractice case, but that was also presented to the district court. It was? Yes. The district court, we contended that we have a medical malpractice case against the EMTs for not completing their evaluation and to allow them to go back into police custody and submitting a false report. So you dismiss that or whatever? You know, I think the real issue in arguing here is that we have so many facts that are in dispute. Whether or not the officer added a second handcuff, you know, we have some evidence that perhaps he added a second pair of handcuffs after Terrell Day had already passed away. We also have evidence, all the video evidence and the photographic evidence, for example on page 984, all the photographs show Mr. Day in a single set of handcuffs. And you can see very clearly that it is very restrictive on his shoulders and his ability for his lungs to expand. There's no other questions, I see that I'm out of time. Thank you, counsel. The case is taken under advisement. We'll hear argument next in the...